UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD ROHN,

                Plaintiff,        Civil Action No. 13-cv-10780
                                        Honorable Stephen J. Murphy, III
                                        Magistrate Judge David R. Grand

    v.

COMMERCIAL RECOVERY
SYSTEMS, INCORPORATED,

                Defendant.
_____/

**REPORT AND RECOMMENDATION TO GRANT
PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT [9]**

**I.   RECOMMENDATION**

On February 25, 2013, Plaintiff Ronald Rohn, a Michigan citizen, filed this lawsuit against Defendant Commercial Recovery Systems, Incorporated, an Illinois corporation collecting debts in Michigan, alleging various violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* [1]. Defendant has failed to appear and defend this action, resulting in the Clerk of the Court entering a default on March 26, 2013. [7]. Presently before the Court is Plaintiff's motion for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2), [9], referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). [10]. Defendant has not responded to the motion. The Court has carefully considered the relevant briefing and pleadings and dispenses with oral argument. *See* E.D. Mich. L.R. 7.1(f)(2). For the following reasons, the Court RECOMMENDS that the motion [9] be GRANTED.

**II.     REPORT**

    **A.     Background**

Plaintiff's complaint seeks damages under the FDCPA.  Plaintiff alleges that he is a "consumer" within the meaning of the FDCPA, 15 U.S.C. § 1692a(3).  (Cplt. ¶ 7).  Plaintiff further alleges that he is purported to have incurred a "debt" as defined by the FDCPA, 15 U.S.C. § 1692a(5), and that Defendant is a "debt collector" under § 1692a(6) of the statute.  (*Id.* ¶¶ 5, 8, 12).

Plaintiff alleges that on or about December 12, 2012, he and a representative of Defendant engaged in a telephone conversation in which Defendant, in an attempt to collect on the debt, represented that it "would garnish up to fifteen percent (15%) of Plaintiff's social security income.  (*Id.* ¶¶ 14-15).  At the time, Plaintiff was collecting Social Security Disability benefits.  (*Id.* ¶ 16).[1]  Defendant also represented that if Plaintiff did not pay his debt, Defendant "would take [Plaintiff] to court."  (*Id.* ¶ 20).  Plaintiff contends that Defendant made this statement without having any intention or authority to sue Plaintiff.  (*Id.* ¶¶ 24).  Plaintiff does not believe any court action has ever been filed against him in relation to this debt.  (*Id.* ¶ 22).

Based on these representations, Plaintiff agreed to set up a post-dated payment to Defendant, providing his checking account information to permit Defendant to withdraw a payment of $286.67 from the account on December 20, 2012.  (*Id.* ¶¶ 26-28).  However, prior to the withdrawal date, Plaintiff placed a stop payment on the $286.67, such that Defendant was unable to withdraw the funds from Plaintiff's account.  (*Id.* ¶¶ 29-30).  After December 20, 2012,

---

[1] Plaintiff asserts that, "Defendant's threat to garnish fifteen percent (15%) of Plaintiff's social security disability income was false, deceptive and/or misleading given that Defendant could not legally have carried out the aforesaid threat."  42 U.S.C. § 407, which governs "Federal Old-Age Survivors, and Disability Insurance Benefits" under Subchapter II of the Social Security Act, provides that "none of the moneys paid or payable or rights existing under this title shall be subject to execution, levy, attachment, garnishment, or other legal process…"

Defendant called Plaintiff in an attempt to collect the debt and informed Plaintiff that it had been unable to withdraw the previously agreed-upon funds. (*Id.* ¶¶ 31-32). It informed Plaintiff that he had given Defendant a "bad check." (*Id.* ¶ 33).

Plaintiff claims that he has "suffered and continues to suffer, personal humiliation, embarrassment, mental anguish and emotional distress" as a result of these communications. (*Id.* ¶ 37). In an affidavit in support of his motion, Plaintiff states that he was shocked to hear that his Social Security Disability benefits could be garnished as a result of this debt,[2] and that if 15% of those benefits were taken every month he would have been unable to pay his bills or purchase food. (Mot. Ex. A ¶ 4). He attests he would have lost his home as a result of such garnishment. (*Id.*). Plaintiff further attests to much of the information discussed above, as well as to the fact that Defendant threated to serve him with papers, and indicated that if he did not sign them, he could be taken to jail. (*Id.* ¶ 6). These statements made Plaintiff worried and paranoid because he was led to believe he was being sued and that there were people trying to find him. (*Id.*). He contacted the Sheriff's office to determine whether they were looking for him. (*Id.*). As a result, he agreed to set up the post-dated payment referenced above, (*id.*), but then issued the stop payment order when he could not afford to make the payment. (*Id.* at ¶ 7). Defendant contacted him again after he stopped this payment and informed him that there would be consequences for him giving Defendant a "bad check." (*Id.* at ¶ 8). Plaintiff was also informed that his lawyer would not "do [him] any good," and when he asked to speak to a supervisor he was hung up on. (*Id.*). Plaintiff attests that he suffered intense stress as a result of this incident that sent him to the doctor for aggravation of a pre-existing condition. (*Id.* ¶ 9). He also was required to contact his bank and change his account number, and change all of his automatic bill payments as a result of

---

[2] As noted above, it is unlawful for a private creditor to garnish a recipient's social security benefits. *See* 42 U.S.C. § 407.

concern over Defendant possessing his bank account information. (*Id.*). He suffered from sleeplessness believing people were knocking at his door and did not socialize with his friends as a result of his stress level. (*Id.*).

Plaintiff alleges that by engaging in the above conduct, Defendant violated various provisions of the FDCPA and he therefore seeks damages from Defendant. Specifically, Plaintiff seeks statutory damages of $1,000.00, actual damages for emotional distress in the amount of $3,000.00, and attorneys' fees and costs totaling $2,563.50. Plaintiff filed his complaint on February 25, 2013, and served Defendant with a copy on February 27, 2013. [1, 5].[3] The docket reflects that Defendant did not answer or otherwise respond to Plaintiff's complaint, and he moved for a default. [6]. On March 26, 2013, the Clerk's Entry of Default was served upon Defendant via U.S. Mail. [7]. On September 6, 2013, Plaintiff filed the instant Motion for Default Judgment, which was served on that date on Defendant via U.S. Mail. [9]. The order of reference for the motion was served on Defendant by the Court on October 11, 2013. [10]. Defendant has never responded to any pleading or motion, nor otherwise appeared to defend this action.

---

[3] The certificate of service filed by Plaintiff reflects that the summons and complaint was "personally served" on "Commercial Recovery Systems, Inc., c/o CT Corporation System, 208 S. LaSalle St. Chicago, IL 60604." [5 at 2]. It did not say who at that address received service for CRS or the relationship between CT Corporation System and Defendant. However, a public search of the Illinois corporation database reflects that CT Corporation System is Defendant's registered agent in Illinois, and is located at the address served. *See* http://www.ilsos.gov/corporatellc/CorporateLlcController (searching for Commercial Recovery Systems) (last visited 10/22/13). Thus, adequate service was made. *See* Fed. R. Civ. P. 4(h)(1)(A) (allowing service on a corporation "in the manner prescribed by Rule 4(e)(1)" which in turn allows service by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where … service is made."); 735 ILCS 5/2-204 (providing that a private corporation "may be served (1) by leaving a copy of the process with its registered agent…"); Fed. R. Civ. P. (4)(h)(1)(B).

**B.    Legal Standards**

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). After default has been entered, the party seeking relief from the defaulting party may apply for a default judgment. Fed. R. Civ. P. 55(b). An application for a default judgment may be made to the Clerk "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation . . ." Fed. R. Civ. P. 55(b)(1). "In all other cases, the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). Unless the party against whom a default judgment is sought is a minor or incompetent, notice of the motion is not required. Fed. R. Civ. P. 55(b)(2).

Although Rule 55(b)(2) does not provide a standard to determine when a party is entitled to a judgment by default, the case law indicates that the Court must exercise "sound judicial discretion" when determining whether to enter a judgment. *State Farm Bank v.* Sloan, No. 11-10385, 2011 U.S. Dist. LEXIS 57652, *4 (E.D. Mich. May 31, 2011); 10A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice & Procedure* § 2685 (3d ed. 1998). Once a default is entered, well-pleaded allegations in the plaintiff's complaint, except those pertaining to the amount of damages, are taken as true. *Alfa Corp. v. Alfa Mortgage, Inc.*, 560 F. Supp. 2d 1166, 1174 (M.D. Ala. 2008) (citing *Nishimatsu Constr. Co. Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)); *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990); *see also Trice v. Lake & County Real Estate*, No. 86-1205, 1987 WL 38852, *2 (6th Cir. Oct. 29, 1987) (quoting *Dundee Cement Co. v. Howard Pipe & Concrete Prods.*, 722 F.2d 1319, 1323 (7th Cir. 1983) ("Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true.")). Nevertheless, the Court still has an obligation to assess whether the

factual allegations are legally sufficient to state the alleged cause of action. *See In re Industrial Diamonds Antitrust Litig.*, 119 F. Supp. 2d 418, 420 (S.D.N.Y 2000) ("While a default constitutes an admission of all the facts 'well pleaded' in the complaint, it does not admit any conclusions of law alleged therein, nor establish the legal sufficiency of any cause of action . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.").

Rule 55 indicates that the Court "may" conduct a hearing to determine the amount of damages. Fed. R. Civ. P. 55(b)(2)(B). An evidentiary hearing is unnecessary if sufficient evidence is submitted to support the request for damages, *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997), or if the amount claimed is one capable of ascertainment from definite figures in the documentary evidence of affidavits. *United Artists Corp. v. Freeman*, 605 F.2d 854, 867 (5th Cir. 1979); *see also Vesligaj v. Peterson*, 331 Fed Appx. 351, 354-55 (6th Cir. 2009) (noting that evidentiary hearing is matter of discretion). However, where "the plaintiff's own testimony is his only evidence of emotional damages, he must explain the circumstances of his injury in reasonable detail and not rely on conclusory statements, unless the facts underlying the case are so inherently degrading that it would be reasonable to infer that a person would suffer emotional distress from the defendant's action." *Harding v. Check Processing, LLC*, No. 10-2359, 2011 WL 1097642, *2 (N.D. Ohio Mar. 22, 2011) (quoting *Wantz v. Experian Info. Solutions*, 386 F.3d 829, 834 (7th Cir. 2004) (abrogated on other grounds by *Safeco Ins. Co. v. Burr*, 551 U.S. 47 (2007) (quotations omitted)). Here, the Court finds a hearing unnecessary as the complaint and Plaintiff's motion and supporting exhibits establish a reasonable basis for the amount of damages he requests.[4]

---

[4] Numerous courts have awarded damages for emotional distress caused by FDCPA violations

**C.     Analysis**

   *1.     Jurisdiction*

First, the Court must determine whether it has jurisdiction over the case and the parties.[5] Because Plaintiff alleges violations of federal law, federal question subject matter jurisdiction exists. 15 U.S.C. § 1331; Cplt. ¶2. The Court also has jurisdiction over the parties. Plaintiff is a Michigan resident and has consented to the Court's jurisdiction by filing an action here, and although Defendant is a foreign corporation (Illinois) personally served outside of Michigan (in Illinois), the Court finds that the Sixth Circuit's test for personal jurisdiction is satisfied on the facts alleged here.

"Where subject matter jurisdiction stems from the existence of a federal question, as it does here, personal jurisdiction over a defendant exists 'if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant[ ] due process.'" *Vlach v. Yaple*, 670 F. Supp. 2d 644, 647 (N.D. Ohio 2009) (quoting *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992)).

---

without a hearing, based on the statements contained in the plaintiff's affidavit. *See e.g. McIntosh v. Check Resolution Service, Inc.*, No. 10-14895, 2011 U.S. Dist. LEXIS 45265 (E.D. Mich. Apr. 27, 2011) (awarding statutory damages of $1,000 and actual damages of $2,500 to compensate Plaintiff's emotional distress); *Harding* 2011 WL 1097642, at *2-3 (awarding plaintiff $5,000 to compensate for emotional distress suffered as a result of defendant's FDCPA violations based allegations in complaint and assertions in affidavit); *Carlile v. N. Am. Asset Serv., LLC*, No. 10-3234, 2010 U.S. Dist. LEXIS 129967, 2010 WL 5125846, at *2 (C.D. Ill. Dec. 9, 2010) (awarding plaintiff $1,500 in actual damages for emotional distress based on affidavit explaining in reasonable detail circumstances of injuries); *Annis v. Eastern Asset Mgmt., LLC*, No. 08-458S, 2010 U.S. Dist. LEXIS 25538, at *12-15 (W.D.N.Y. Mar. 18, 2010) (awarding actual damages of $5,000 to plaintiffs for emotional damages caused by defendant's FDCPA violations based on affidavits, despite absence of medical evidence in support of claims of emotional distress).

[5] In particular, the Court must "determine whether it has jurisdiction over the defendant before entering a judgment by default against a party who has not appeared in the case." *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 845 (E.D. Mich. 2006).

Michigan's long-arm statute confers limited personal jurisdiction over a corporation arising out of certain acts, including "[t]he doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort." MCL 600.715. Plaintiff's allegations that Defendant initiated at least one false, deceptive and misleading communication into the forum state, causing him tortious injury, are sufficient to confer jurisdiction under this statute.[6] *See e.g. Vlach*, 670 F. Supp. 2d at 648 (finding more restrictive Ohio long-arm statute satisfied where plaintiff alleged defendant sent false, deceptive or misleading communications into the forum state in violation of FDCPA); *see also Vlasak v. Rapid Collection Sys. Inc.*, 962 F. Supp. 1096, 1100 (N.D. Ill. 1997) (violations of FDCPA are a breach of legal duty and therefore tortious for purposes of Illinois long-arm statute).

Michigan's long-arm statute is, however, constrained by the limitations of the Due Process Clause of the United States Constitution. *Southern Machine Company v. Mohasco Industries, Inc.*, 401 F.2d 374, 380 (6th Cir. 1968) (citing *International Shoe Co. v. State of Washington*, 326 U.S. 310 (1945)). The Sixth Circuit has held that to satisfy due process requirements, the exercise of personal jurisdiction over a foreign defendant must satisfy the following three requirements: "(1) the defendant must personally avail himself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must arise from defendant's activities there; and (3) the acts of defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable." *Neal v. Jansssen*, 270 F.3d 328, 332 (6th Cir. 2001). All three elements are

---

[6] Plaintiff's complaint and accompanying affidavit make clear that he and Defendant had two telephone conversations. However, while both make clear that the second conversation, after December 20, 2012, was initiated by Defendant, it is not clear from the papers whether Defendant also initiated the December 12, 2012 conversation, as the complaint only alleges that "Plaintiff and Defendant engaged in a telephone conversation" on that date, and the affidavit states that Plaintiff "spoke with" Defendant on that date. (Cplt. ¶ 14; Plf. Mot. Ex. A ¶ 4).

satisfied here.

First, Plaintiff's complaint alleges that Defendant intentionally caused him emotional harm by giving him false, deceptive and misleading information over the phone about his debt, in violation of the FDCPA. While it is not clear from the complaint or Plaintiff's affidavit if both contacts with Defendant were initiated by Defendant, or only the second contact, the Sixth Circuit has held that "when the actual content of the communications into the forum gives rise to an intentional tort action, that alone may constitute personal availment. It is the quality of the contacts, not the quantity, that determines whether they constitute personal availment." *Id.* (citing *LAK, Inc. v. Deer Creek Enter.*, 885 F.2d 1293, 1301 (6th Cir. 1989) (internal quotations omitted). Second, Plaintiff's cause of actions arises from Defendant's activities in the forum state because Defendant's communications "form the 'heart of plaintiff's claims.'" *Neal*, 270 F.3d at 332-333 (distinguishing cases where communications were only ancillary to ultimate claim of harm).

Finally, Defendant's contact with Plaintiff is substantial enough to make it reasonable to subject Defendant to the personal jurisdiction of this Court. "Where, as here, the first two criteria are met, an inference of reasonableness arises and only the unusual case will not meet the substantial connection criterion." *Schneider v. Hardesty*, 669 F.3d 693, 703 (6th Cir. Feb. 23, 2012); *see also Vlach*, 670 F. Supp. 2d at 649 (collecting cases in various districts for the proposition that debt collection letters sent by out of state defendants are sufficient to establish personal jurisdiction under the Due Process Clause where letters were allegedly in violation of FDCPA); *but see Rimmer v. John Doe, Inc.*, No. 13-0548, 2013 U.S. Dist. LEXIS 148959 (D. Minn. Aug. 30, 2013) (identifying several cases within the Eight Circuit that hold single debt collection communication insufficient to confer personal jurisdiction on court). It is further

reasonable to subject Defendant to the jurisdiction of this Court because Michigan has an interest in ensuring that its residents have adequate recourse for harms inflicted by nonresidents, and the burden on Defendant, a foreign corporation, to litigate in Michigan is less than the burden on an older disabled individual living on disability benefits to be forced to litigate in Illinois. *Schneider*, 669 F.3d at 704. Therefore, the Court finds the exercise of personal jurisdiction over Defendant reasonable and that it comports with due process.

### 2. *Liability and Damages*

As outlined above, Defendant has, by default, admitted all well-pleaded allegations in Plaintiff's Complaint. It also has failed to contest the other factual averments contained in Plaintiff's affidavit supporting the instant motion. The Court therefore finds that the allegations set forth in Plaintiff's complaint and in his affidavit, as discussed in detail above, are sufficient to establish that Defendant, through its authorized representatives, violated the FDCPA in several ways, including but not limited to:

> (1) representing or implying that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action in violation of 15 U.S.C. § 1692e(4) – *see e.g.*, Cplt. ¶¶ 14-15, 20, 24; Mot. Ex. A ¶ 4;
>
> (2) threatening to take action that cannot legally or is not intended to be taken in violation of 15 U.S.C. § 1692e(5) – *see* e.g., Cplt. ¶¶ 14-15, 20, 24; *supra* fns. 1, 2; 42 U.S.C. § 407; and
>
> (3) using any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning the consumer in violation of 15 U.S.C. § 1692e(10) – *see e.g.,* Cplt. ¶¶14-15, 20, 24

Under the FDCPA, a debt collector who violates the statute is liable for "any actual damage sustained" by the plaintiff, statutory damages as the Court may allow up to $1,000 and "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15

U.S.C. § 1692k(a).

Based upon Defendant's conduct, the Court finds that statutory damages of $1,000 are appropriate in this case. Further, Plaintiff presents documentation to support an award of attorneys' fees of $2,198.50 and litigation costs of $365.00.[7] Plaintiff submits documentation establishing that his attorneys expended 5.0 hours on this litigation at hourly rates ranging from $225 to $395 and that a paralegal at his attorneys' law firm expended an additional 4.1 hours at an hourly rate of $115. (Plf. Mot. Ex. B, D). He also submitted materials substantiating the reasonableness of the time spent and the rates sought. (Plf. Mot. Ex. B-D). The Court, having reviewed all of the foregoing materials, finds the hours billed and rates charged to be reasonable and necessary.

Finally the Court finds that Plaintiff provides more than bare allegations of emotional distress to support an award of actual damages of $3,000. (Plf. Mot. Ex. A). Defendant's representatives falsely told Plaintiff that his social security benefits would be garnished if he did not pay his debt, despite the fact that such garnishment is illegal. 42 U.S.C. § 407. Further, Defendant's representatives led Plaintiff to believe that it was not only intending to file a lawsuit against him, but that it would be able to have him imprisoned if he did not pay his debt. Such communications, especially accusing someone of potentially criminal activity, is likely to cause the average person humiliation, embarrassment, and/or mental anguish. Defendant's conduct not only caused Plaintiff the emotional distress of worrying about how he would live if his fixed benefit income was reduced due to garnishment, but coerced him into agreeing to disclose his bank account information for purposes of a payment on the debt, ultimately resulting in his changing his bank account number and re-enrolling his automatic payments to and from that

---

[7] Plaintiff's costs consist of the $350 filing fee and $15 expended to serve the Summons and Complaint.

11

account due to concerns that Defendant might improperly use his bank account information. Finally, Defendant's violations were not limited to a single incident.

## III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Plaintiff's Motion for Default Judgment **[9]** be **GRANTED** and that, as a result of Defendant's FDCPA violations, a **DEFAULT JUDGMENT BE ENTERED AGAINST DEFENDANT AND IN FAVOR OF PLAINTIFF** in the amount of **$6,563.50** ($1,000 in statutory damages; $3,000 in actual damages; $2,198.50 in attorneys' fees and $365.00 in costs).

Dated: October 29, 2013  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
 United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. A party may respond to another party's objections within 14 days after being served with a copy.

*See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was served upon counsel of record via email addresses the court has on file.

                                                          s/Felicia M. Moses
                                                          FELICIA M. MOSES
                                                          Case Manager

Dated:  October 29, 2013